United States District Court
Southern District of Texas
**ENTERED**
February 18, 2022
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| WILLIE DICKERSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-21-3805 |
| | § | |
| U.S. DEPARTMENT OF VETERANS | § | |
| AFFAIRS AND DENNIS MCDONOUGH, | § | |
| SECRETARY OF VETERANS AFFAIRS, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Willie Dickerson sued his former employer, the United States Department of Veterans Affairs and Dennis McDonough, the Secretary of Veterans Affairs, for discrimination based on disability under the Americans with Disabilities Act. 42 U.S.C. § 12101 *et seq*. The defendants moved to dismiss Dickerson's complaint. Dickerson responded, the defendants replied, and Dickerson filed a surreply.

Based on the pleadings; the motion, response, and reply; and the applicable law, this court finds that the complaint's allegations are inadequate and grants the motion to dismiss, without prejudice and with leave to amend. The amended complaint must be filed no later than March 25, 2022. The reasons for these rulings are explained below.

## I.    Background

Dickerson worked for the Department of Veterans Affairs at the DeBakey Medical Center as a Medical Supply Technician. (Docket Entry No. 1 at 4). On August 18, 2019, he was injured at work while pushing a cart carrying 300 pounds of equipment. (Docket Entry No. 1 at 4). He received an MRI the following day, which showed that he had a torn rotator cuff and a lower back

strain.  (Docket Entry No. 1 at 4).  On August 18, 2019, one of his supervisors, Timothy Reese, removed him from his job, explaining that he could no longer fulfill his duties and that he would not be allowed to return to work without an approved restrictions list.  (Docket Entry No. 1 at 4). Dickerson alleges that he could have performed other jobs such as sterilizing surgical instruments, packaging pills, delivering surgical instruments to different departments, assembling trays of surgical equipment, and stocking departmental supplies.  (Docket Entry No. 1 at 4).  He alleges that Reese denied him the opportunity to perform these tasks.  (Docket Entry No. 1 at 4). Dickerson alleges that the Department of Veterans Affairs did not attempt reasonable accommodations to permit him to return to work.

Dickerson alleges that Reese cited him for being absent without leave for 424 hours of work between October 9, 2019, to December 12, 2019, even though he was not allowed to work during this time.  (Docket Entry No. 1 at 5).  He alleges that the Department of Veterans Affairs refused to make any accommodation for his disability and that, as a result, he was forced to ask for leave.  When he applied under the Family Medical Leave Act, he alleges, Reese accused him of "using the Family and Medical Leave Act inappropriately."  (Docket Entry No. 1 at 5).

On December 25, 2019, Dickerson received an "Order to Return to Duty" from the Department of Veterans Affairs.  (Docket Entry No. 1 at 6).  The letter again noted that he had missed work for 424 hours.  (Docket Entry No. 1 at 6).  On January 3, 2020, Reese allegedly refused to review the "Work Restriction-Light Duty" form prepared by Dickerson's doctor. (Docket Entry No. 1 at 6).  Dickerson alleges that when he gave Reese the form, Reese responded, "I don't know how you got hurt. You're still AWOL and you still have to come to work."  (Docket Entry No. 1 at 6).

2

On January 16, 2020, Dickerson returned to work.  He alleges that he knew that he would not be able to fulfil the job duties of a Medical Supply Technician without a reasonable accommodation.  (Docket Entry No. 1 at 6).  After he was injured again, and his earlier injury was exacerbated, he was placed on "liberal leave," which is an indefinite, unpaid suspension.  (Docket Entry No. 1 at 7).  The defendants note that Dickerson was fired on July 28, 2021.  (Docket Entry No. 14 at 1).

## II.    The Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  (quoting *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*,

556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).  "A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'"  *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555).  "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201."  *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

### III.   Analysis

Under the Americans with Disabilities Act, it is unlawful for an employer to "discriminate against a qualified individual on the basis of disability."  42 U.S.C. § 12112(a).  To establish an Americans with Disabilities Act discrimination claim, a plaintiff may present "direct evidence that [he] was discriminated against because of [his] disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)."  *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 764 (5th Cir. 2016).   The Americans with Disabilities Act applies to federal employees through the Rehabilitation Act.  *Crawford v. U.S. Dep't of Homeland Sec.*, 245 F. App'x 369, 380 (5th Cir. 2007) (citing 29 U.S.C. § 791).

Dickerson does not allege direct discrimination, so the *McDonnell Douglas* framework applies.  Dickerson must first make a prima facie showing of discrimination.  "To establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability."  *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (quoting *Zenor v. El Paso Healthcare Sys.*, Ltd., 176 F.3d 847, 853 (5th Cir. 1999)).  The burden then shifts to the employer to present a legitimate, nondiscriminatory reason for the adverse employment action.  *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 521 (5th Cir. 2021).  If the employer meets its burden, the employee then must show that those reasons were pretextual.  *Id.*

The defendants argue that Dickerson has not alleged that he was qualified for the Medical Supply Technician job or that he was subject to an adverse employment action.

### A.      Whether Dickerson was Qualified

"Qualified" means "either (1) [the employee] could perform the essential functions of the job in spite of [his] disability," or "(2) that a reasonable accommodation of [his] disability would have enabled [him] to perform the essential functions of the job."  *Campos*, 10 F.4th at 521 (citations omitted).  The defendants argue that Dickerson has not alleged facts showing that he was qualified for the Medical Supply Technician job because he did not describe the job requirements for a Medical Supply Technician, or what his limitations were.

Dickerson responds that he has met his burden of showing that he could perform the essential functions of his job by alleging that he continued to work as a Medical Supply Technician for two months after he was disabled.  But in Dickerson's complaint, he alleges that he was taken off his job because his supervisor determined that he could not do his job.  (Docket Entry No. 1 at 4).  Dickerson's allegations do not show that he was capable of doing the job.

Dickerson also argues that he has sufficiently alleged that reasonable accommodations were available.  He alleged that he could have performed such tasks as sterilizing, delivering, and packaging sterilization equipment.  But Dickerson has not alleged any facts describing the essential functions of his job, nor facts showing that his proposed different assignments were consistent with completing the essential functions of his job.  Dickerson has failed to allege that he was qualified for the job as Medical Supply Technician.

### B.    Adverse Employment Action

Dickerson alleges that he was suspended from work on October 8, 2019, and again on January 29, 2020.  (Docket Entry No. 1 at 4, 7).  He alleges that he was cited in his record for being absent without leave from his job for 424 hours and that the defendants failed to honor the work restrictions that his physician recommended.  (Docket Entry No. 1 at 5–6).

According to the defendants, Dickerson was placed on "liberal leave."  (Docket Entry No. 7 at 8).  The defendants argue that this unpaid leave is not an adverse employment action for discrimination claims, even though it may for retaliation claims.

An adverse employment action is "a judicially-coined term referring to an employment decision that affects the terms and conditions of employment."  *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014).  In *Barricks*, the Fifth Circuit concluded that an involuntary medical leave of absence was not an adverse employment action for a disability discrimination claim because "the leave of absence is best characterized as a *benefit* to employees to prevent their being terminated."  *Barricks v. Minyard Food Stores*, Inc., No. 98-10147, 1999 WL 47042, at *4 (5th Cir. 1999).  It did not qualify as an "ultimate employment decision."  *Id.*

In *McCoy*, the Fifth Circuit recognized that *Burlington Northern & Santa Fe Railway Co. v. White*, 773 F.3d 688 (2006), rejected the Fifth Circuit's standard for evaluating "adverse

employment actions" for retaliation claims. *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). The Fifth Circuit historically limited "adverse employment action" for both retaliation and discrimination claims to "ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *Id.* The Supreme Court instead recognized that an adverse employment action in the retaliation context was "any action that might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* The Fifth Circuit interpreted *Burlington Heights* to apply only to retaliation claims and concluded that administrative leave was still insufficient to be an adverse employment action for discrimination claims. *Id.* at 560. The Fifth Circuit, citing *Barricks*, has continued to recognize that unpaid leave is not an adverse employment action in the discrimination context. *See Clark v. Charter Commc'ns, L.L.C.*, 775 F. App'x 764, 768 (5th Cir. 2019) (unpaid leave in lieu of attendance discipline is not an adverse employment action).

Dickerson relies on *LeMaire*, in which the Fifth Circuit explained that the suspension was an adverse employment action because "a two-day suspension without pay might have dissuaded a reasonable employee from making a charge of discrimination. *LeMaire v. Louisiana Dep't of Transp. & Dev.*, 480 F.3d 383, 390 (5th Cir. 2007). But this was in the context of a retaliation claim, which has a different standard. *Price v. Wheeler*, 834 F. App'x 849 (5th Cir. 2020), does not help Dickerson either. In *Price*, the court only "assumed, arguendo," that a 14-day suspension was an adverse employment action, but decided that the plaintiff failed to show pretext. *Id.* at 856. The court did not analyze whether the suspension was an "adverse employment action."

The authorities cited by Dickerson do not allege facts showing that unpaid leave is an adverse employment action in the discrimination context. *Barricks* still applies, and as a result, Dickerson has not alleged an adverse employment action based on his unpaid leave, and he has

not yet alleged any other adverse employment action.  But the defendants disclosed that Dickerson was fired on July 28, 2021.  Dickerson may also have a claim related to his compensation.  As the defendants concede, amendment would not be futile, and Dickerson is entitled to the opportunity.

## IV.    Conclusion

The defendants' motion to dismiss, (Docket Entry No. 7), is granted without prejudice and with leave to amend, no later than March 25, 2022.

SIGNED on February 18, 2022, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge