United States District Court
Southern District of Texas
**ENTERED**
June 08, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILLIE DICKERSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-21-3805 |
| | § | |
| U.S. DEPARTMENT OF VETERANS | § | |
| AFFAIRS AND DENNIS MCDONOUGH, | § | |
| SECRETARY OF VETERANS AFFAIRS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Willie Dickerson sued his former employer, the United States Department of Veterans Affairs, and Dennis McDonough, the Secretary of Veterans Affairs, for discrimination based on disability under 42 U.S.C. § 126. The court granted the motion to dismiss the original complaint because Dickerson had not sufficiently alleged that he was qualified for the job or suffered an adverse employment action. Dickerson amended to add allegations about his qualifications for the job, that he was denied any accommodation for a temporary disability, and that he was retaliated against because he filed a complaint with the Equal Employment Opportunity Commission. The defendants moved to dismiss the amended complaint, and then amended the motion to dismiss. (Docket Entry Nos. 22, 24).

The first motion to dismiss the amended complaint is denied as moot. (Docket Entry No. 22). Based on the amended pleadings; the motion, response, and reply; and the applicable law, the court grants in part and denies in part the amended motion to dismiss. (Docket Entry No. 24). The reasons for these rulings are explained below.

I.      **Background**

Dickerson worked as a Medical Supply Technician for the Department of Veterans Affairs at the DeBakey Medical Center in Houston. (Docket Entry No. 21 at 3). He was qualified for that job. On August 18, 2019, he was injured at work while pushing a cart carrying 300 pounds of equipment. (Docket Entry No. 21 at 4). The next day, an MRI showed that he had a torn rotator cuff and a lower back strain. (Docket Entry No. 21 at 4). Dickerson alleges that from the date of his injury on August 18, 2019, until October 8, 2019, he continued to work without incident despite his injury. (Docket Entry No. 21 at 4).

On October 8, 2019, one of Dickerson's supervisors, Timothy Reese, removed him from his job, explaining that he could no longer fulfill the job duties. (Docket Entry No. 21 at 5). Dickerson alleges that he could have continued to perform most of the tasks needed to do his job, such as sterilizing surgical instruments, packaging pills, delivering surgical instruments to different departments, assembling trays of surgical equipment, and stocking departmental supplies. (Docket Entry No. 21 at 4–5). Dickerson alleges that Reese denied him the opportunity to perform these and similar tasks. (Docket Entry No. 21 at 5). He alleges that he could have performed all the duties, except for lifting heavy packages. (Docket Entry No. 21 at 6). He also alleges that other injured employees were given temporary "light duty jobs," but he was not offered one. (Docket Entry No. 21 at 5). Dickerson alleges that he was ready, willing, and able to work from when he was removed on October 9, 2019, until he reported back for work on January 16, 2020. He alleges that he was not allowed to return to work during that period. (Docket Entry No. 21 at 4–5).

Dickerson received notice on December 25, 2019, that the Department considered him absent without leave for 424 hours between October 9, 2019, and December 12, 2019. (Docket

2

Entry No. 21 at 5). He alleges that he was absent only because his supervisor told him that he could not return unless he could work without any restrictions. (Docket Entry No. 21 at 4). He alleges that the Department called this "unpaid leave," but that it was a de facto unpaid suspension because he wanted to and could return to work but was not allowed to do so. (Docket Entry No. 21 at 8).

On January 3, 2020, Dickerson provided Reese with a work restriction form, prepared by his doctor, explaining that he was limited to lifting 15 pounds. (Docket Entry No. 21-2). Dickerson alleges that Reese refused to review or sign the form, explaining that "I don't know how you got hurt. You're still AWOL and you still have to come to work." (Docket Entry No. 21 at 6). Dickerson reported for duty on January 16, 2020, and his supervisor told him that he needed to work without restrictions. (Docket Entry No. 21 at 6). That same day, he was assigned to move a container that weighed more than 15 pounds, which exacerbated his existing injury. (Docket Entry No. 21 at 6). Dickerson alleges that the Department placed him on "liberal leave" on January 29, 2020. He alleges that liberal leave was like his earlier forced leave, "an indefinite, unpaid suspension." (Docket Entry No. 21 at 7). He did not return to work until February 1, 2021, at which time he could do so without restrictions. (Docket Entry No. 21 at 7).

Dickerson alleges that the Department of Veterans Affairs did not attempt to provide a reasonable accommodation that would permit him to return to work between October 2019 to February 2021 without requiring him to lift heavy packages. (Docket Entry No. 5–6). Dickerson alleges that the Department wrongly accused him of being absent without leave when he was absent only because Reese would not let him return to work with restrictions. (Docket Entry No. 21 at 5).

3

Dickerson alleges that when he returned to work in February 2021, another employee physically attacked him multiple times and he had to fight to defend himself. (Docket Entry No. 21 at 7–8). The Department fired him on July 28, 2021, citing these fights as the basis for termination. (Docket Entry No. 21 at 8). Dickerson alleges that the Department discriminated against him because of his disability between October 8, 2019, and July 28, 2021, by refusing to allow him to work without restrictions or otherwise make a reasonable accommodation to his temporary need to avoid lifting weights above 15 pounds, and that it fired him on July 28, 2021, in retaliation for filing an EEOC complaint. (Docket Entry No. 21 at 8–9). The only allegation as to an EEOC complaint is that he received a right to sue letter on August 23, 2021, after he was fired. (Docket Entry No. 21 at 8–9). There is no allegation as to when he filed the complaint or when the Department knew about the filing.

## II.     The Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is

4

not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

**III.   Analysis**

    **A.   The Americans with Disabilities Act Discrimination Claim**

Under the Americans with Disabilities Act, it is unlawful for an employer to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). To establish an Americans with Disabilities Act discrimination claim, a plaintiff may present "direct

5

evidence that [he] was discriminated against because of [his] disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)." *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 764 (5th Cir. 2016). The Americans with Disabilities Act applies to federal employees through the Rehabilitation Act. *Crawford v. U.S. Dep't of Homeland Sec.*, 245 F. App'x 369, 380 (5th Cir. 2007) (citing 29 U.S.C. § 791).

To plead a prima facie discrimination claim under the ADA, a plaintiff must allege facts showing: "(1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (quoting *Zenor v. El Paso Healthcare Sys.*, Ltd., 176 F.3d 847, 853 (5th Cir. 1999)). The burden then shifts to the employer to present a legitimate, nondiscriminatory reason for the adverse employment action. *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 521 (5th Cir. 2021). If the employer meets its burden, the employee then must show that those reasons were pretextual. *Id.*

The Department argues that Dickerson was not qualified for the Medical Supply Technician position after he was injured in August 2019 because he could not lift heavy objects. "Qualified" means "either (1) [the employee] could perform the essential functions of the job in spite of [his] disability," or "(2) that a reasonable accommodation of [his] disability would have enabled [him] to perform the essential functions of the job." *Campos*, 10 F.4th at 521 (citations omitted). Reasonable accommodations include modifications to an existing job or reassignment to a vacant position but do not include creating a vacancy or a new job. *Barricks v. Minyard Food Stores, Inc.*, 170 F.3d 184 (5th Cir. 1999). "A function is 'essential' if it bears 'more than a marginal relationship' to the employee's job." *LHC Grp., Inc.*, 773 F.3d at 697. "The inquiry

6

into whether a particular function is essential initially focuses on whether the employer actually requires employees in the position to perform the functions that the employer asserts are essential." *Id.* at 698 (quoting Interpretive Guidance on Title I of the Americans With Disabilities Act, 29 C.F.R. pt. 1630, app. § 1630.2(n)).

The court concluded that, in the original complaint, Dickerson had not pleaded the elements of a prima facie case, including that he was qualified for the job, because he had "not alleged any facts describing the essential functions of his job, nor facts showing that his other proposed assignments were consistent with completing the essential functions of his job." (Docket Entry No. 18 at 6).

Dickerson's amended complaint added allegations that that his job duties included:

> a) disassembling reusable medical equipment (RME) b) determining the correct cleaning method for ultrasonic cleaners, mechanical washer/disinfectors, cart washers and chemical cleaning/decontamination agents c) inspecting, assembling, and determining the correct method and packaging for sterilization, including steam, Sterrad, Steris, and high-level disinfecting scope reprocessors and d) performing and documenting daily operational checks and records for all processes and equipment.

(Docket Entry No. 21 at 3–4). Dickerson alleged that he could sterilize and deliver equipment, assemble sterilization trays, document information about the equipment, and stock departmental supplies. (Docket Entry No. 21 at 4–5). He alleged that the essential functions of his job did not require lifting heavy packages. (Docket Entry No. 21 at 4–5).

The Department, citing the Medical Supply Technician job description, argues that Dickerson was not qualified because his job required "standing and walking during the entire workday and frequent bending and lifting of packages (occasionally weighing as much as 50 pounds)." (Docket Entry No. 24 at 10). This job description is consistent with finding that lifting heavy packages was an occasional task, rather than an essential function, of the Medical

7

Supply Technician job. Dickerson's disability was temporary and it did not prevent him from doing all but one part of his job (occasionally lifting heavy packages). That part could be accommodated by allowing him to avoid that one, relatively infrequent, part of the job and instead have him do the broad range of tasks he was able to perform. Dickerson also alleged that the Department could have allowed him to do a light duty job like they allowed other injured employees to do. (Docket Entry No. 21 at 5). The amended complaint sufficiently alleges that Dickerson's job did not "actually require [him] . . . to perform the functions that the employer asserts are essential," or at least not as frequently as the Department argues. *See LHC Grp., Inc.*, 773 F.3d at 698 (there was a fact issue as to whether driving was an essential function "where traveling was not as prominent a part of a Team Leader's duties as the position description suggests"). Dickerson has sufficiently alleged that between October 8, 2019, and January 16, 2020, he was qualified for the Medical Supply Technician job because he could do the essential functions of the job, which did not include frequent heavy lifting.

Dickerson alleges that following his second injury on January 16, 2020, the Department refused to allow him to work or to engage in an interactive process with him to create a reasonable accommodation, and instead placed him again on "liberal leave," which was effectively an indefinite, unpaid suspension. (Docket Entry No. 21 at 6–7).

The Department points to Dickerson's allegations that on numerous days between January 29, 2020, when he was out after his second injury, and before he returned to work in February 2021, he "could not get out of bed, could not walk, and/or could not attend to his personal hygiene." (Docket Entry No. 24 at 10). The Department argues that this shows that Dickerson was not qualified for his job during this period. (Docket Entry No. 24 at 10). Dickerson alleged that there were "several days" of incapacity between January 29, 2020, and

8

February 1, 2021, because he was suffering from depression during this time. (Docket Entry No. 21 at 7). He alleged that the Department's failure to make reasonable accommodations when he returned to work on January 16, 2020, caused his second, exacerbated injury and his second period of unpaid leave, which then led to depression because of his physical pain and his inability to earn money. (Docket Entry No. 21 at 7). Dickerson alleged that as with the first period of time away from work—from October 2019 to January 2020—after he was reinjured in January 2020, he was not allowed to return except on a restriction-free basis. (Docket Entry No. 21 at 6). He alleged that the reason he was occasionally incapacitated from depression during this period was because he was not allowed to work or be paid. (Docket Entry No. 21 at 7). Dickerson alleges that he was unable to walk on some days, but he has sufficiently alleged that on most days, he would have been able to do the essential functions of the job, which did not require heavy lifting.

Dickerson returned to work without restrictions on February 1, 2021, until he was fired on July 28, 2021. (Docket Entry No. 21 at 7). He has not alleged that he was disabled during this period.

Dickerson alleges that during the periods when he was temporarily disabled but qualified for the job with an accommodation—between October 9, 2019 and January 16, 2020, and again from January 29, 2020 to February 1, 2021—he was forced to take unpaid leave. Dickerson argues that taking unpaid leave was an adverse action for the purpose of his discrimination claim. In the context of a discrimination claim, only "ultimate employment decisions" are actionable. *Austgen v. Allied Barton Sec. Servs., L.L.C.*, 815 F. App'x 772, 777 (5th Cir. 2020). Ultimate employment decisions include "hiring, granting leave, discharging, promoting, and

9

compensating." *Stringer v. N. Bolivar Consol. Sch. Dist.*, 727 F. App'x 793, 799 (5th Cir. 2018). Actions that are "the equivalent of a demotion" may suffice. *Id.*

Whether unpaid leave is an adverse employment action is fact-dependent. Dickerson has provided additional allegations in his amended complaint. The court previously explained that forced leave may not be an adverse action. Indeed, it has been described as "a *benefit* to employees to prevent their being terminated." *Barricks*, 170 F.3d at *4. "Time off, whether paid or unpaid, can be a reasonable accommodation," and "[t]emporary unpaid leave is not rendered unreasonable simply because it 'involve[d] some cost' to employee." *Austgen*, 815 F. App'x at 775. The Fifth Circuit has also explained that unpaid leave is not an adverse employment decision if it is imposed when the employee "otherwise have faced attendance discipline." *Clark v. Charter Commc'ns, L.L.C.*, 775 F. App'x 764, 768 (5th Cir. 2019).

The allegations in Dickerson's original complaint were insufficient to support an inference that Dickerson was qualified for his position. The alternative to Dickerson's unpaid leave was termination, making unpaid leave appear to be a benefit to Dickerson. But the allegations in the amended complaint support an inference that Dickerson was qualified and therefore was denied compensation based on the Defendants' failure to accommodate his temporary disability. In *Austgen*, the plaintiff was placed "on temporary leave of only a few weeks while awaiting his doctor's recommendations on his ability to work." *Austgen*, 815 F. App'x at 775. But here, the leave was not a temporary step toward identifying a reasonable accommodation that would allow Dickerson to return to work. Dickerson alleges that he did not need short-term leave as the reasonable accommodation, and that he could perform all of the essential functions of his work—or at least could perform them with a reasonable

10

accommodation against lifting weights over 15 pounds—when he was forced to take unpaid leave. He has sufficiently alleged an adverse action on account of his disability.

The Department has not shown there is a basis to dismiss the discrimination claim at the motion to dismiss stage.

### B. The Americans with Disabilities Act Retaliation Claim

To plead a prima facie case of retaliation under the Americans with Disabilities Act, Dickerson must allege facts that show that: (1) he participated in an activity protected under the statute; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse action. *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020). Dickerson alleges that he was fired "on July 28, 2021[,] in retaliation for him filing an EEO complaint against the VA for unlawful disability discrimination." (Docket Entry No. 21 at 9). While temporal proximity may be sufficient to infer a causal connection at the prima facie stage, *Gosby v. Apache Indus. Servs.*, Inc., 30 F.4th 523, 527 (5th Cir. 2022), Dickerson has not alleged when he filed the EEOC complaint. He alleges only that he received a right to sue letter from the EEOC on August 23, 2021, after he was fired in July 2021. The alleged facts do not provide enough information about temporal proximity to infer causation. *See Swanson v. General Services Admin.*, 110 F.3d 1180, 1188 n.3 (5th Cir. 1997) ("the mere fact that some adverse action is taken *after* an employee engages in some protected activity will not *always* be enough for a *prima facie* case").

Dickerson also argues that he can show causation because his employment record does not support his removal from service and because the Department did not fire him in accordance with *Douglas v. Veterans Admin.*, 5 M.S.P.R. 280 (1981). The *Douglas* factors describe what a federal agency must consider before imposing a disciplinary penalty on an employee. *Kreso v.*

11

*McDonald*, 631 F. App'x 519, 524 (10th Cir. 2015). But the amended complaint does not allege facts showing that these factors were not considered. Dickerson alleges that he "will demonstrate that he was removed from federal service despite th[e] fact that none of the [*Douglas* factors] justified Dickerson being fired." (Docket Entry No. 21 at 12). In response to the motion to dismiss, he argues that his "removal from federal service was not justified under any of the Douglas Factors," but again he does not provide allegations to support this conclusory statement. (Docket Entry No. 25 at 4). Dickerson's conclusory allegation that he was denied proper process in his firing is insufficient to make a prima facie showing of causation.

### C. Failure to Accommodate Claim

Disability discrimination under the ADA includes a failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability. . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A). A failure to accommodate claim involves proof similar to, but distinct from, a disability discrimination claim. *Windhauser v. Bd. of Supervisors for Louisiana State Univ. & Agr. & Mech. Coll.*, 360 F. App'x 562, 565 (5th Cir. 2010). A failure-to-accommodate claim requires the plaintiff to show that: "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Neely v. PSEG Texas, Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013). "A failure-to-accommodate claim provides a mechanism to combat workplace discrimination even when the employee in question has not suffered adverse employment action." *LHC Grp.,* 773 F.3d at 703. An employer is required to engage in an

"interactive process" and have a "meaningful" dialogue to work out an accommodation for known disabilities. *Munoz v. Seton Healthcare, Inc.*, 557 F. App'x 314, 319 (5th Cir. 2014).

Dickerson has sufficiently alleged that between October 8, 2019, and January 16, 2020, and between January 29, 2020, and February 1, 2021, he was qualified to do most of his job tasks other than the "occasional" lifting of heavy objects; the Department knew he was disabled because it forced him to take leave because of the disability and he provided a reasonable accommodation proposal from his doctor on January 3, 2020; and the Department failed to make reasonable accommodations because it allowed him to work only "without restrictions" and made no effort to see if he could work with a temporary restriction. This is sufficient to allege that the Department failed to accommodate his disability.

D.     **The Americans with Disabilities Harassment Claim**

Dickerson argues in response to the motion to dismiss that he also stated a claim for harassment. Dickerson argues that he was harassed because the Department put false information into his record, sent him a letter falsely accusing him of missing work, and refused to honor reasonable accommodations requested by his doctor. (Docket Entry No. 25 at 10). "[H]arassment must be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 471 (5th Cir. 2021). "Criticism of an employee's work performance . . . and even threats of termination do not satisfy the standard for a harassment claim." *Credeur v. Louisiana Through Off. of Att'y Gen.*, 860 F.3d 785, 796 (5th Cir. 2017). Even if the amended complaint raises a claim for harassment, the alleged conduct falls far short.

## IV. Conclusion

The motion to dismiss the amended complaint, (Docket Entry No. 24), is granted as to the retaliation and harassment claims, without prejudice and with leave to amend. An amended complaint must be filed by July 15, 2022. The motion to dismiss is denied as to the discrimination and failure to accommodate claims.

SIGNED on June 8, 2022, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge