United States District Court
Southern District of Texas
**ENTERED**
September 08, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| WILLIE DICKERSON, § | |
| § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. H-21-3805 |
| § | |
| U.S. DEPARTMENT OF VETERANS § | |
| AFFAIRS AND DENNIS § | |
| MCDONOUGH, SECRETARY OF § | |
| VETERANS AFFAIRS, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND OPINION**

The plaintiff, Willie Dickerson, worked at the Department of Veterans Affairs Michael E. DeBakey Medical Center in Houston as a medical supply technician. After Dickerson was injured on the job, the VA placed him on "liberal leave" without pay.[1] When Dickerson returned to work, the VA put him on regular duty. He was injured again. The VA again placed him on liberal leave. Shortly after he returned to work for the second time, Dickerson got in a fistfight with another employee. The VA fired him. This lawsuit followed.

Dickerson alleges that the VA violated the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, by placing him on liberal leave after his injuries and denying his request for a reasonable accommodation that would allow him to continue to work with modifications in his duties. (Docket Entry No. 37 at ¶¶ 77–78). Dickerson alleges that he was capable of performing the essential duties of the job despite his injuries or that he could have performed those duties with a

---

[1] "Liberal leave," or "leave without pay," is "a temporary nonpay status and absence from duty that, in most cases, is granted at the employee's request." U.S. Office of Personnel Mgmt., Fact Sheet: Leave Without Pay, available at https://www.opm.gov/policy-data-oversight/pay-leave/leave-administration/fact-sheets/leave-without-pay/.

reasonable accommodation. (*Id.* at ¶ 78). He also alleges that the VA retaliated against him for filing an Equal Employment Opportunity complaint by placing him on liberal leave for the second time and ultimately terminating his employment. (*Id.* at ¶¶ 91–94). Finally, he alleges that the VA violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, by: retaliating against him for taking FMLA leave after his first injury; accusing him of being absent without leave; placing him on liberal leave for the second time; and terminating his employment. (*Id.* ¶¶ 96–101).

**I.    Background**

Dickerson's first injury occurred on August 18, 2019. (Docket Entry No. 37 at ¶ 17). He tore his rotator cuff and strained his back while pushing a cart loaded with 300 pounds of medical equipment. (*Id.* at ¶¶ 17–18). Despite his injury, he continued to work until October 8, 2019, when he was placed on liberal leave and told that he could not return to work until that leave ended. (*Id.* at ¶ 19; Docket Entry No. 64-17 at ¶ 2). Dickerson did not want liberal leave, so he submitted a request for a reasonable accommodation and applied for light duty. (Docket Entry No. 61-3 at ¶ 8). The VA denied the reasonable-accommodation request on October 9, 2019. (Docket Entry No. 64-6 at 1). On October 10, 2019, Dickerson also applied for and received approval under the FMLA to take intermittent leave for medical appointments. (Docket Entry No. 64-17 at ¶ 5; Docket Entry No. 61-4 at ¶ 10; Docket Entry No. 64-10 at ¶ 10).

Dickerson returned to work on January 16, 2020. (Docket Entry No. 37 at ¶ 28). He submitted a work restriction form from his physician stating that, among other job limits, he could not lift over 15 pounds. (Docket Entry No. 64-2). His supervisor, Timothy Reese, refused to review or sign the form, and Dickerson was ordered to do his job without restrictions. (Docket Entry No. 37 at ¶¶ 25–26). On his first day back, Dickerson was injured on the job again—this

time more severely—while lifting a container weighing over 15 pounds. (Docket Entry No. 37 at ¶ 28; Docket Entry No. 64-8). Dickerson told one of his supervisors that he "could not continue working." (Docket Entry No. 37 at ¶ 28). Dickerson requested leave without pay and a reasonable accommodation, which the VA denied on the ground that Dickerson's disabilities were too severe to be accommodated with anything but liberal leave. (Docket Entry No. 64-6 at 2; Docket Entry No. 64-12; Docket Entry No. 61-6 at 4). On January 29, 2020, the VA again placed him on liberal leave. (Docket Entry No. 37 at ¶ 31; Docket Entry No. 64-17 at ¶ 4).

Dickerson recovered and returned to work in February 2021. (Docket Entry No. 37 at ¶ 34). Dickerson's coworker, Erian Felder, told Dickerson that he had had sex with Dickerson's wife. (Docket Entry No. 37 at ¶ 68). This led to a series of altercations between Dickerson and Felder. (Docket Entry No. 37-3; Docket Entry No. 61-9 at 5). The VA ordered Dickerson "not to engage in any contact with Erian Felder on duty time unless the contact is directly related to the performance of your official duties and *only* with expressed prior supervisory permission or instruction." (Docket Entry No. 61-8). Nonetheless, the two encountered each other in the locker room at work while changing shifts, and a fistfight resulted. (Docket Entry No. 37-8). For purposes of this motion, the court assumes the instigator was Felder. (*Id.*). The VA suspended both men, but while Felder was reinstated around September 2021, Dickerson was terminated effective July 28, 2021. (Docket Entry No. 64 at 9; Docket Entry No. 64-19 at 116–17).

Before he was fired, Dickerson filed an EEO complaint alleging disability discrimination. (Docket Entry No. 61-1 at 2). After his termination, Dickerson filed a second EEO complaint, alleging that his firing was retaliatory. (Docket Entry No. 37 at ¶ 9). The EEO Commission ruled against Dickerson. (Docket Entry No. 61 at 12). Dickerson filed this action on November 19, 2021. (Docket Entry No. 1).

3

The VA has moved to dismiss Dickerson's third amended complaint, to strike the exhibits attached to Dickerson's response to the motion to dismiss, and for summary judgment. The motions to dismiss and to strike, (Docket Entry Nos. 46, 48), are denied as moot. The motion for summary judgment, (Docket Entry No. 61), is granted in part and denied in part. Summary judgment is granted as to Dickerson's claims that: (1) he was wrongfully removed from his duties on October 8, 2019; (2) the VA failed to accommodate his disability after his second injury; (3) the VA engaged in disability discrimination by placing him on liberal leave after his second injury; and (4) the VA retaliated against him for his FMLA activity. Summary judgment is otherwise denied. The reasons are set out below.

## II.   The Rule 56 Standard

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)). "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (quoting reference omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying" the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When 'the non-movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is [a dispute] of

material fact warranting trial." *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration in original) (quoting reference omitted). "However[,] the movant 'need not negate the elements of the nonmovant's case.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)). "If 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

After the movant meets its Rule 56(c) burden, "the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quoting references omitted). The nonmovant "must identify specific evidence in the record and articulate the 'precise manner' in which the evidence" aids their case. *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (quoting reference omitted). Of course, all reasonable inferences are drawn in the nonmovant's favor. *Loftin v. City of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022). But a nonmovant "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting reference omitted).

### III.  Analysis

#### A.  Exhaustion

The VA argues that Dickerson failed to exhaust his administrative remedies as to his claim that he was removed from his duties as a medical supply technician on October 8, 2019. (Docket Entry No. 61 at 21). Dickerson did not present this claim to an EEO counselor within 45 days of its occurrence, as required by 29 C.F.R. § 1614.105(a)(1). Instead, he argues, the court should consider the removal as, "at a minimum," evidence of "the damages Dickerson suffered as a result

5

of the [VA's] 'overall pattern of harassment' on the basis of his disability.'" (Docket Entry No. 64 at 13).

Dickerson failed to exhaust his administrative remedies as to his claim that he was wrongfully removed from his duties on October 8, 2019. Dickerson's argument that the incident was part of an "overall pattern of harassment" fails because Dickerson's third amended complaint does not raise a harassment claim, or at least does not allege conduct sufficiently "pervasive or severe" as needed to state a harassment claim. *Thompson v. Microsoft Corp.*, 2 F.4th 460, 471 (5th Cir. 2021). The same issue was raised in the context of Dickerson's first amended complaint. The court rejected his harassment claim. (Docket Entry No. 33 at 13). Dickerson's third amended complaint is no different in this respect.

Although the court will not consider Dickerson's claim that he was wrongfully removed from his duties in October 2019, it will consider his claim that the VA failed to accommodate his disability after removing him from his duties.

### B. Failure to Accommodate

Disability discrimination under the Americans with Disabilities Act includes a failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A). A failure-to-accommodate claim requires the plaintiff to show that: "(1) the plaintiff is a 'qualified individual with a disability'; (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Neely v. PSEG Texas, Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013). An employer is required to engage in an "interactive process" and have a "meaningful dialogue" to attempt to

work out an accommodation for known disabilities. *E.E.O.C. v. Chevron Phillips Chem. Co., L.P.*, 570 F.3d 606, 621 (5th Cir. 2009) (quoting reference omitted).

The VA argues that Dickerson's failure-to-accommodate claim fails as a matter of law for seven reasons.

First, the VA argues that Dickerson has sued the wrong agency. Dickerson's complaint alleges that it was "the OWCP ["Office of Workers' Compensation Program"] Department at the DeBakey Medical Center" that took him off the job on October 8, 2019. (Docket Entry No. 37 ¶ 19). The VA asserts that the OWCP Department is under the Department of Labor, not the Department of Veterans Affairs. (Docket Entry No. 61 at 23). Dickerson responds that he simply "misunderst[ood] . . . the difference between the VA's relationship with the OWCP Department and the OWCP Department itself" when he filed his third amended complaint. (Docket Entry No. 64 at 23–24). Dickerson clarifies in his response that it was the VA's Office of Workers' Compensation Program that removed him from his job, not the Department of Labor. (*Id.* at 24).

Dickerson's clarification is supported by the evidence. Dickerson states in his sworn statement that "[a]fter I reported the on-the-job injury to the VA's OWCP Office, I was ordered by **Otis Cole** of the VA's OWCP Office not to come into work anymore." (Docket Entry. No. 64-17 ¶ 2). The deposition testimony of Teresa Ligon, the Workers' Compensation Program Coordinator at the VA, establishes that the VA's Office of Workers' Compensation Program is, indeed, part of the VA and not the Department of Labor. (Docket Entry No. 64-16 at 5–6).

Second, the VA argues that Dickerson's claim for failure to accommodate should be dismissed because Dickerson "failed to turn in his medical documents, despite repeated requests from the VA for him to do so." (Docket Entry No. 61 at 24). Dickerson responds that it is

7

undisputed that he submitted some paperwork to the VA, and that the paperwork was "reasonable documentation" because it established that he had a disability. (Docket Entry No. 64 at 15).

The court agrees with Dickerson. Dickerson submitted two "duty status reports" that included a physician's clinical findings that Dickerson had an injury to his shoulder and spine. (Docket Entry Nos. 64-2, 64-8). The VA cites no support for its argument that Dickerson's failure to submit all the paperwork the VA requested defeats his claim for failing to accommodate as a matter of law. The EEOC materials the VA cites state that documentation is sufficient if it "establish[es] that a person has an ADA disability, and that the disability necessitates a reasonable accommodation." (Docket Entry No. 61 at 24 (citing EEOC "Requesting Reasonable Accommodation" in Enforcement Guidance (Oct 17, 2002), available at http://www.eeoc.gov/policy/docs/accommodation.html)). The paperwork that Dickerson submitted meets that standard.

Third, the VA argues that Dickerson's disabilities prevented him from performing the essential functions of a medical supply technician, and that the only way the VA could have accommodated his disabilities was by giving him liberal leave. (Docket Entry No. 61 at 24–25). According to the VA, the essential functions of a medical supply technician include disassembling, inspecting, and reassembling contaminated medical equipment, and conducting "daily operational checks and records on all processes and equipment." (*Id.* at 25 (citing Docket Entry No. 37-1 at 1)). The VA asserts that these functions require "stand[ing] and walk[ing] throughout the entire workday, with frequent bending and lifting of packages, occasionally as much as fifty (50) pounds." (*Id.*). Reese states in his declaration that "[t]he [medical supply technician]'s duties require standing for nearly all duties. The essential functions and duties include walking, bending, pushing, pulling, stooping, twisting, reaching, and lifting of up to 35 pounds throughout the duty

8

day." (Docket Entry 61-4 at ¶ 5). He concludes that "[t]here are no essential functions involved in S[terile] P[rocessing] S[ervice] for a[] [medical supply technician] that would preclude one or more of [Dickerson's] restrictions." (*Id.* at ¶ 6).

The court finds a factual dispute material to determining whether the VA could have accommodated Dickerson's disability after his first injury other than by giving him liberal leave. Dickerson continued to work as a medical supply technician for nearly two months after his first injury. (Docket Entry No. 37 at ¶ 19). He was capable of lifting up to 15 pounds 6 hours a day; sitting, standing, walking, kneeling, bending, twisting, pulling, and pushing 2 hours a day; and engaging in "fine manipulation" 6 hours a day. (Docket Entry No. 37-2). Reese stated in an email to other VA personnel that Dickerson's restriction on returning to work after his first injury could "easily be accommodated temporarily as he can ensure he doesn't lift anything but small sets (more than 80% of our sets are under 15 pounds) in the performance of his regular duties." (Docket Entry No. 64-11). This evidence undermines the VA's contention that heavy lifting is an essential function of the medical supply technician job.

Dickerson's second injury is different. After this injury, Dickerson could not get out of bed for "several days" because of "severe pain," and he had "to use a scooter because walking normally was too painful . . . ." (Docket Entry No. 37 at ¶ 32). Dickerson does not explain or point to evidence showing how he could have performed the essential functions of the job with these symptoms and limitations. Summary judgment for the VA is appropriate as to this part of Dickerson's failure-to-accommodate claim.

Fourth, the VA argues that there is no evidence showing that there was an available position that would accommodate Dickerson's restrictions. (Docket Entry No. 61 at 25–26). This argument is not persuasive on the current record because, as explained above, there is a factual dispute

9

material to determining whether the VA could have allowed Dickerson to continue in his role as a medical supply technician after his first injury, with or without restrictions. At this time, Dickerson does not need to prove that he could have been placed in an entirely different position.

Fifth, the VA argues that Dickerson's request to be placed on light duty was not a reasonable accommodation. (*Id.* at 26). As noted, there are factual disputes material to deciding this issue.

Sixth, the VA argues that it provided Dickerson with the only available accommodation: "liberal amounts of leave." (*Id.* at 27). The court agrees with the VA as to Dickerson's second injury. As to his first injury, there is a factual dispute as to whether the VA could have used an accommodation other than liberal leave.

Seventh, the VA seizes on Dickerson's allegation that he was "fully capable of continuing to fulfill his job duties" after his first injury and argues that, if that were true, Dickerson would not need an accommodation. (Docket Entry No. 61 at 28 (citing Docket Entry No. 37 at ¶ 20)). The VA's position does not fully address Dickerson's argument that, "[a]ssuming arguendo that Dickerson could not perform the essential functions of the job despite his disability, the evidence shows that he could have done so with a reasonable accommodation." (Docket Entry No. 37 at ¶ 85). Factual disputes as to this issue again preclude summary judgment.

Summary judgment is granted as to Dickerson's claim that the VA failed to accommodate his disability after his second injury. It is denied as to Dickerson's claim that the VA failed to accommodate his disability after his first injury.

### C. Disability Discrimination

Under the Americans with Disabilities Act, it is unlawful for an employer to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). To establish a

discrimination claim, a plaintiff may present "direct evidence that [he] was discriminated against because of [his] disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 764 (5th Cir. 2016). The Americans with Disabilities Act applies to federal employees through the Rehabilitation Act. *Crawford v. U.S. Dep't of Homeland Sec.*, 245 F. App'x 369, 380 n.6 (5th Cir. Aug. 16, 2007) (citing 29 U.S.C. § 791(g)). Employment discrimination claims against the federal government are governed by the same standards as claims against private employers under the Americans with Disabilities Act. *See Pinkerton v. Spellings*, 529 F.3d 513, 516–17 (5th Cir. 2008); 29 U.S.C. § 791(f) ("The standards used to determine whether this section has been violated in a complaint alleging nonaffirmative action employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 . . . .").

To plead a *prima facie* discrimination claim under the Americans with Disabilities Act, a plaintiff must plead facts that could show: "(1) that he has a disability; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account of his disability." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (quoting *Zenor v. El Paso Healthcare Sys.*, Ltd., 176 F.3d 847, 853 (5th Cir. 1999)) (alteration adopted). The burden then shifts to the employer to present a legitimate, nondiscriminatory reason for the adverse employment action. *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 521 (5th Cir. 2021). If the employer meets its burden, the employee then must show that those reasons were pretextual. *Id.*

"Qualified" means "either (1) [the employee] could perform the essential functions of the job in spite of [his] disability," or "(2) that a reasonable accommodation of [his] disability would have enabled [him] to perform the essential functions of the job." *Id.* at 521 (citations omitted).

11

"Reasonable accommodations include modifications to an existing job or reassignment to a vacant position but do not include creating a vacancy or a new job." *Barricks v. Minyard Food Stores, Inc.*, 170 F.3d 184, 1999 WL 47042, at *4 (5th Cir. 1999). "A function is 'essential' if it bears 'more than a marginal relationship' to the employee's job." *LHC Group, Inc.*, 773 F.3d at 697.

First, the VA argues that Dickerson's disability discrimination claim fails because he alleges that the Department of Labor, not the VA, removed him from his job on October 8, 2019. (Docket Entry No. 61 at 29). As explained above, Dickerson's complaint confuses the Department of Labor's Office of Workers' Compensation Program with the VA's Office of Workers' Compensation Program. Dickerson has clarified, and the evidence supports, that it was the VA and not the Department of Labor that removed him.

Second, the VA argues that Dickerson's disability discrimination claim fails because he has not shown an adverse employment action. (Docket Entry No. 61 at 30–31). The VA argues that the two periods during which Dickerson was given liberal leave cannot be an adverse employment action because "[t]he leave provided was not only necessary, but a benefit to prevent termination or attendance discipline." (*Id.* at 30). The VA notes that under Fifth Circuit precedent, "only 'ultimate employment decisions' are actionable" as disability discrimination. (*Id.* (citing *Austgen v. Allied Barton Sec. Servs., L.L.C.*, 815 F. App'x 772, 777 (5th Cir. 2020))). Ultimate employment decisions include "hiring, granting leave, discharging, promoting, and compensating. *Stringer v. N. Bolivar Consol. Sch. Dist.*, 727 F. App'x 793, 799 (5th Cir. 2018) (quoting reference omitted).

The Fifth Circuit's recent decision in *Hamilton v. Dallas County*, --- F. 4th ----, 2023 WL 5316716 (5th Cir. Aug. 18, 2023) (en banc), undermines to the point of abrogation prior Fifth Circuit caselaw applying the ultimate-employment-decision requirement in Americans with

Disabilities Act cases. The en banc court recognized that Title VII's text is substantially broader than the judicially created requirement of an ultimate employment decision:

> Nowhere does Title VII say, explicitly or implicitly, that employment discrimination is lawful if limited to non-ultimate employment decisions. To be sure, the statute prohibits discrimination in ultimate employment decisions—"hir[ing]," "refus[ing] to hire," "discharg[ing,]" and "compensation"—*but it also* makes it unlawful for an employer "otherwise to discriminate against" an employee "with respect to [her] terms, conditions, or privileges of employment."

*Id.* at *4 (quoting 42 U.S.C. § 2000e-2(a)(1)). The court also noted that the ultimate-employment-decision requirement is inconsistent with Supreme Court precedent holding that "an adverse employment action 'need only be a term, condition, or privilege of employment.'" *Id.* at *5 (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 77 (1984)). The court jettisoned the "atextual 'ultimate employment decision' gloss," instead "apply[ing] the statute as it is written and as construed by the Supreme Court." *Id.* at *5.

This holding leaves no justification for continuing to apply the ultimate-employment-decision requirement to disability discrimination claims. The relevant language in the Americans with Disabilities Act is substantially similar to the Title VII language analyzed in *Hamilton*. Both statutes prohibit discrimination regarding the "terms, conditions, and privileges of employment." *Compare* 42 U.S.C. § 12112(a), *with* 42 U.S.C. § 2000e-2(a). As the Fifth Circuit noted, this language "is broad." *Hamilton*, 2023 WL 5316716, at *6. It "'is not limited to economic or tangible discrimination,' and 'it covers more than terms and conditions in the narrow contractual sense.'" *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998)).

Applying this standard, the VA's placement of Dickerson on liberal leave is an adverse employment action because it prevented him from working and earning income. But even if the more stringent ultimate-employment-decision requirement continues to apply to disability

13

discrimination claims, Dickerson has raised a factual dispute material to determining whether he was subjected to an adverse employment action.

Ultimate employment decisions are those that "affect[] the terms and conditions of employment," *Price v. Wheeler*, 834 Fed. App'x 849, 855 (5th Cir. 2020), and include "hiring, granting leave, discharging, promoting, and compensating," *Stringer*, 727 F. App'x at 799 (quoting reference omitted). Actions that are "the equivalent of a demotion" may also suffice. *Id.* In some circumstances, forced leave may be "a *benefit* to employees to prevent their being terminated . . . ." *Barricks*, 1999 WL 47042, at *4. The Fifth Circuit has explained that unpaid leave is not an adverse employment decision if it is imposed when the employee "would otherwise have faced attendance discipline." *Clark v. Charter Commc'ns, L.L.C.*, 775 F. App'x 764, 768 (5th Cir. 2019).

Applying this standard, a factual dispute exists as to whether Dickerson's placement on liberal leave was an adverse employment action. If the VA is correct that liberal leave was the only way to accommodate Dickerson's disability, then the leave would be a benefit to Dickerson, not an adverse employment action. If, on the other hand, Dickerson could have been accommodated with a modification of his duties to allow him to continue to work, then liberal leave could be an adverse employment action. As explained above, Dickerson has raised a factual dispute as to whether he was able to continue working as a medical services technician, at least after his first injury.

Third, the VA argues that Dickerson's disability discrimination claim fails under the *McDonnell-Douglas* burden-shifting framework because the VA had a legitimate nondiscriminatory reason for placing Dickerson on liberal leave: his disabilities allowed no other accommodation. (Docket Entry No. 61 at 31). Dickerson attempts to show that the VA's proffered nondiscriminatory reason is pretextual by relying on Reese's deposition testimony. Reese testifies

14

that he interpreted Dickerson's restrictions to preclude typing because Dickerson was not permitted to bend, and "[y]ou have to bend to sit down." (Docket Entry No. 64 at 27 (quoting Docket Entry No. 64-5 at 90–91)). Dickerson interprets this as "false testimony" that establishes pretext. (*Id.*).

The court is unpersuaded by Dickerson's attempt to show pretext. Reese's testimony does not tend to show that the VA placed Dickerson on liberal leave for a discriminatory reason. But because there are factual disputes material to determining whether the VA could have accommodated Dickerson after his first injury other than by liberal leave, *McDonnell Douglas* does not preclude Dickerson's discrimination claim as to the first leave.

Summary judgment is granted dismissing Dickerson's claim that the VA engaged in disability discrimination by placing him on leave after his second injury. Summary judgment is denied on Dickerson's claim that the VA engaged in disability discrimination by placing him on leave after his first injury.

### D. Retaliation

The VA argues that Dickerson's FMLA retaliation claim is barred by sovereign immunity because Congress did not create a private right of action for federal employees to sue under the FMLA. (Docket Entry No. 61 at 19). The VA relies on an unpublished Fifth Circuit decision holding that "[f]ederal employees with more than twelve months of service do not have a private right of action for FMLA violations." *Carlson v. White*, 133 F. App'x 144, 144–45 (5th Cir. 2005) (citing 5 U.S.C. §§ 6381–6387). It appears that every circuit to consider this issue has reached the same conclusion. *See Armstrong v. United States*, 2021 WL 6101492, at *1 (11th Cir. Dec. 21, 2021); *Burg v. U.S. Dep't of Health And Hum. Servs.*, 387 F. App'x 237, 240 (3d Cir. 2010); *Russell v. U.S. Dep't of the Army*, 191 F.3d 1016, 1018–19 (9th Cir. 1999); *Bogumill v. Off. of*

15

*Pers. Mgmt.*, 168 F.3d 1320, 1998 WL 486754, at *1 (Fed. Cir. 1998); *Mann v. Haigh*, 120 F.3d 34, 37 (4th Cir. 1997).

Following this precedent leads to the conclusion that Congress did not include in Title II of the FMLA the sort of express language required to waive sovereign immunity. *See Hebert v. United States*, 438 F.3d 483, 487 (5th Cir. 2006) ("The United States is a sovereign, and, as such, is immune from suit unless it has expressly waived such immunity and consented to be sued.") (quoting *Smith v. Booth*, 823 F.2d 94, 96 (5th Cir. 1987)) (alteration adopted). Summary judgment is therefore granted dismissing Dickerson's FMLA retaliation claim. The court will consider only Dickerson's retaliation claim under the Americans with Disabilities Act.

A *prima facie* case of retaliation under the Americans with Disabilities Act requires a showing that: (1) the plaintiff participated in an activity protected under the statute; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse action. *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020). Causation can sometimes be established by temporal proximity between the protected activity and the adverse action alone. *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). If a plaintiff relies on temporal proximity alone, without some other evidence of retaliation, the timing must be "very close." *Feist v. La., Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)). If the employer offers a legitimate, nondiscriminatory reason that explains the adverse action, the plaintiff must produce some evidence from which a jury could infer that retaliation was the real motive. *Id.*

The VA argues that Dickerson's retaliation claim fails because he has produced no evidence of a causal connection between his protected activity (filing an EEO complaint for

16

disability discrimination) and the VA's decisions to place him on liberal leave and terminate his employment. (Docket Entry No. 61 at 33). The VA notes that Dickerson was terminated 15 months after he filed his EEO complaint. (*Id.* at 33–34). The VA also contends that the VA employee who made the final decision to terminate Dickerson, Francisco Vasquez, did not know of Dickerson's protected activities. (*Id.* at 34). Further, the VA argues that even if Dickerson has made a *prima facie* showing, his retaliation claim fails because the VA has proffered legitimate nonretaliatory reasons for placing Dickerson on liberal leave and terminating his employment. (*Id.* at 31, 35–36). The VA asserts that Dickerson was placed on liberal leave because it was the only way to accommodate his disability. (*Id.* at 31). The VA also asserts that it terminated Dickerson's employment because he got in a fistfight with another VA employee. (*Id.* at 35). These are legitimate, nonretaliatory reasons.

Dickerson responds that a causal link between his EEO complaint and his termination can be inferred from his employment record and the VA's alleged departure from typical policies and procedures. (Docket Entry No. 64 at 29). Dickerson notes that his employment record shows no previous disciplinary action. (*Id.*). And he contends that the VA deviated from its typical policies and procedures in terminating him because his supervisor, Gwendolyn Holland, signed the memorandum recommending his termination "even though she: 1) was not responsible for most of the responses provided in the memorandum and 2) did not understand the Douglas Factors . . . ." (*Id.* at 30).

Dickerson also relies on Holland's deposition testimony to show that Reese and other VA employees wanted to terminate him even before the fistfight:

> Q: Do you have any memory like: This is what Mr. Reese said that I thought was unprofessional?
> A: I know that there was an email, something along the lines that they had been working on removal of Mr. Dickerson. I don't remember for how many months,

17

> but apparently that it had been going on for awhile. And the comments was, like: I don't understand why we just can't get rid of him. And to me I felt that that was not okay. I mean, I didn't know what was happening; but I just felt that that was not professional in any way.
>
> Q: Do you know who that was sent to, this email?
>
> A: So Mr. Reese had sent it, because I know I was on it and Ms. Irving was on that email.

(Docket Entry No. 64-19 at 113–14).

Further, Dickerson attempts to show that the fistfight explanation is pretext by relying on evidence that Felder was disciplined less harshly than Dickerson. (Docket Entry No. 64 at 31–32). Dickerson has raised a factual dispute material to determining whether the VA fired him because he filed an EEO complaint for disability discrimination. There is evidence that supports a finding that Reese wanted to fire Dickerson even before the fistfight happened.[2] (Docket Entry No. 64-19 at 113–14). There is also some evidence supporting a finding that Felder initiated the altercation. (*Id.* at 49). Felder kept his job, and Dickerson was fired. (*Id.* at 116). *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 659 (5th Cir. 2012) (more favorable treatment of similarly situated employees can support a finding of pretext).

The 15-month time lapse between Dickerson's EEO complaint and his termination is evidence of the lack of pretext, but this evidence is not fatal to his retaliation claim, given the other evidence that could support an inference of retaliation. Dickerson does not rely solely on time to establish causation, and there is enough "other evidence of retaliation" to require trying the case. *Feist*, 730 F.3d at 454–55.

The VA argues that Vasquez's lack of knowledge about Dickerson's protected activities precludes Dickerson's retaliation claim. The record presents a factual dispute material to

---

[2] The court overrules the VA's hearsay objection to Holland's deposition testimony. (Docket Entry No. 66 at 7). The testimony summarizes the content of an email sent by Reese and falls within Federal Rule of Evidence 801(d)(2).

determining whether Vasquez was influenced in his decision to terminate Dickerson by the information in the memorandum recommending removal, which was prepared by VA employees who did know of Dickerson's protected activities. (Docket Entry No. 64 at 32; Docket Entry No. 64-20 at ¶ 4). *See Haire v. Bd. of Sup'rs of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 366 n.11 (5th Cir. 2013) ("Under the cat's paw theory, a subordinate employee's discriminatory remarks regarding a co-worker can be attributed to the workplace superior, ultimately the one in charge of making employment decisions, when it is shown that the subordinate influenced the superior's decision or thought process.") (citing *Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2011)).

Summary judgment is appropriate as to Dickerson's FMLA retaliation claim, but not as to his retaliation claim under the Americans with Disabilities Act.

## IV. Conclusion

Summary judgment is granted in part and denied in part. It is granted as to Dickerson's claims that (1) he was wrongfully removed from his duties on October 8, 2019; (2) the VA failed to accommodate his disability after his second injury; (3) the VA engaged in disability discrimination by placing him on liberal leave after his second injury; and (4) the VA retaliated against him for his FMLA activity. Summary judgment is otherwise denied. The VA's motion to dismiss, (Docket Entry No. 46), which raises the same arguments addressed here, and the motion to strike, (Docket Entry No. 48), are denied as moot.

SIGNED on September 8, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge